FILED
2013 Sep-09  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN P. NORRED,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** _____ |
| | ) | |
| **OCWEN LOAN SERVICING,** | ) | |
| **LLC,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, John P. Norred, by and through his attorneys, and brings the following action to recover damages against Defendant, Ocwen Loan Servicing, LLC:

### PRELIMINARY STATEMENT

1.     This action is brought by the Plaintiff, John P. Norred, against the Defendant, Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), for multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices, and for violations of the Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 U.S.C. § 2605.

2.     Defendant has attempted to collect a debt that was previously discharged in bankruptcy and has attempted to collect the discharged debt through means that violate 15 U.S.C. § 1692 *et seq.*

3.     Jurisdiction over the FDCPA claims is conferred upon this Court by 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

4.    Jurisdiction over the RESPA claims is conferred upon this Court by 12 U.S.C § 2614 and 28 U.S.C. § 1331.

5.    Venue lies in this judicial district in that the events which gave rise to this claim occurred here.

## PARTIES

6.    Plaintiff, John P. Norred, is an individual who resides at 709 Patricia Avenue, Talladega, AL 35160.

7.    Defendant, Ocwen, is a limited liability company with its principal place of business in Florida.  At all times material to this action, Defendant regularly transacted business in the State of Alabama.

8.    Defendant is a "debt collector" as that term is defined in the FDCPA, 15 U.S.C. § 1692a(6).

9.    Defendant, Ocwen, is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2).

## FACTS

10.    On or about March 3, 2003, Plaintiff executed a Note in the amount of $139,500.00 payable to Ameriquest Mortgage Company (hereinafter the "Note" or the "Loan"). (See attached Exhibit A.)

11.    The indebtedness was secured by a Mortgage on the property located at 101 Hawthorne Street, Talladega, Alabama 35160 (hereinafter the "Mortgage"). (See attached Exhibit B.)

12.    At the time the Mortgage was executed, the property described in the Mortgage served as Plaintiff's principal residence, but Plaintiff owned no interest in the property.

13.    Defendant failed to record the Mortgage.

14.   Servicing rights to the Loan were subsequently transferred to American Home Mortgage.

15.   On or about March 19, 2009, Plaintiff filed a Chapter 13 Bankruptcy, Case No. 09-40779-JJR13 (hereinafter the "Bankruptcy").

16.   The Loan originally made between Plaintiff and Ameriquest was unsecured at the time Plaintiff filed the Bankruptcy and at all other times.

17.   The Note was in default at the time the Bankruptcy was filed.

18.   American Home Mortgage was listed on Schedule F of Plaintiff's Bankruptcy Petition as an unsecured creditor. The amount of the debt was listed as approximately $131,000.00. (See attached Exhibit C.)

19.   American Home Mortgage was included on the creditor mailing matrix and was served with notice of Plaintiff's Bankruptcy. (See attached Exhibit D.)

20.   On or about August 12, 2009, American Home Mortgage filed a Motion for Relief From Stay in Plaintiff's Bankruptcy case. The Motion stated that the amount owed on the debt was approximately $144,727.76. (See attached Exhibit E.)

21.   On or about September 3, 2009, American Home Mortgage withdrew its Motion for Relief. (See attached Exhibit F.)

22.   American Home Mortgage never filed a claim in Plaintiff's Bankruptcy.

23.   On or about May 31, 2012, Plaintiff received a Bankruptcy discharge. (See attached Exhibit G.)

24.   The debt to American Home Loans (originally between Plaintiff and Ameriquest) was among those discharged by the Bankruptcy.

25.   Defendant, Ocwen, subsequently obtained servicing rights and/or ownership of the debt originally made between Plaintiff and Ameriquest.

26.     The loan was in default at the time servicing rights and/or ownership of the debt were transferred to Defendant.

27.     On or about March 2013, Defendant reported to the credit reporting bureaus that the debt was past due and that it had been involved in a Chapter 13 Bankruptcy proceeding.

28.     In April or May 2013, Defendant began calling Plaintiff at least three times per day and continued to do so for several months.

29.     Defendant's representatives told Plaintiff that he still owed approximately $60,000.00 on the debt.

30.     Defendant's representatives told Plaintiff that they would garnish his wages if he did not pay the debt.

31. On one occasion, Plaintiff became extremely agitated while talking to Defendant's representatives, and several representatives could be heard laughing in the background at his anxiety.

32.     Plaintiff told Defendant on numerous occasions that the debt was discharged in his Bankruptcy and that he was no longer liable for the debt.

33.     Plaintiff requested on numerous occasions that Defendant confirm with the Bankruptcy Court for the Northern District of Alabama, Eastern Division that the debt had been discharged.

34.     Plaintiff told Defendant on numerous occasions that he was represented by counsel -- Campbell & Campbell, P.C. of Talladega, Alabama -- with respect to the debt.

35.     Despite the declarations and request mentioned above in Paragraphs 32-34, Defendant continued to call Plaintiff more than three times a day for several months.

36.     On June 6, 2013, Plaintiff's counsel sent to Defendant a facsimile reiterating Plaintiff's protestations that the debt had been discharged in Plaintiff's Bankruptcy and that communication with Plaintiff should cease.  (See attached Exhibit H.)

37.    Plaintiff's counsel received no response to the June 6, 2013 facsimile, and the telephone calls to Plaintiff continued.

38.    On July 25, 2013, Plaintiff's counsel again sent to Defendant a letter and facsimile advising Defendant that the debt had been discharged and demanding that communication with Plaintiff cease immediately.  The letter and facsimile also advised that legal action would be taken if Defendant continued to ignore the Bankruptcy discharge.  (See attached Exhibit I.)

39.    Defendant did not respond to Plaintiff's counsel's July 25, 2013 letter, and the collection attempts continued.

40.    Also on July 25, 2013, Plaintiff's counsel sent to Defendant a "qualified written request" in an attempt to determine why Defendant still insisted on attempting to collect the discharged debt.  (See attached Exhibit J.)

41.    Defendant did not respond to Plaintiff's counsel's qualified written request of July 25, 2013, and the collection attempts continued.

42.    In late July 2013, Plaintiff recorded a conversation with Defendant's representatives (hereinafter the "Conversation").

43.    During the Conversation, Plaintiff again told Defendant that the debt had been discharged in his Bankruptcy and that he was represented by counsel with respect to this debt.

44.    During the Conversation, Plaintiff also told Defendant that he intended to pursue legal action against Defendant for its repeated harassment regarding the discharged debt.

45.    Since the Conversation, Defendant has continued to call Plaintiff more than three times a day attempting to collect the discharged debt.

46.    In August 2013, Plaintiff received two letters from Defendant — one dated August 9, 2013, and one dated July 31, 2013 — which stated little more than that Defendant was the servicer of the loan, but that it may or may not own the loan.  (See attached Exhibits K and L.)

47.    The above-referenced letters were the first written communications Plaintiff received from Defendant.

48.    On or about August 17, 2013, Defendant mailed to Plaintiff a letter regarding insurance on the property at 101 Hawthorne Street, Talladega, Alabama—property which the Defendant no longer owns and in which Defendant never had a security interest. (See attached Exhibit M.)

49.    On or about August 19, 2013, Defendant mailed to Plaintiff an Account Statement which alleged that Plaintiff owed a principal balance of approximately $131,000 and that he was approximately $71,000 past due on the account. (See attached Exhibit N.)

50.    The discharged debt continues to appear on Plaintiff's credit report, and that has prevented Plaintiff from obtaining financing to purchase a new home.

51.    Because of the foregoing, Plaintiff was caused to institute this present action.

## COUNT I—FDCPA VIOLATION

52.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

53.    Defendant knew that Plaintiff was represented by an attorney with respect to this debt because the previous owner of the debt was notified of, and made an appearance in, Plaintiff's Bankruptcy and because Defendant reported the debt to the credit bureaus as having been in a Chapter 13 bankruptcy prior to ever contacting Plaintiff.  Further, Plaintiff told Defendant repeatedly that Defendant should contact his attorney, and Plaintiff's counsel sent several written communications to Defendant alerting it that Plaintiff was represented with respect to the debt.

54.    Despite its knowledge of Plaintiff's representation by counsel, Defendant continued to contact Plaintiff directly, thereby violating 15 U.S.C. § 1692c(a)(2) of the FDCPA on multiple occasions.

## COUNT II—FDCPA VIOLATION

*Norred v. Ocwen*
*Complaint*
Page 6 of 11

55.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

56.    Plaintiff, through counsel's fax of June 6, 2013, notified Defendant in writing that he wished further communication to cease.

57.    Defendant ignored Plaintiff's request, thereby violating 15 U.S.C. § 1692c(c) of the FDCPA on numerous occasions.

## COUNT III—FDCPA VIOLATION

58.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

59.    Plaintiff, through its counsel's letter and fax of July 25, 2013, again notified Defendant in writing that he wished further communication to cease.

60.    Defendant ignored Plaintiff's request, thereby violating 15 U.S.C. § 1692c(c) of the FDCPA on multiple occasions.

## COUNT IV—FDCPA VIOLATION

61.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

62.    During a telephone conversation, Defendant's representatives laughed at an obviously frustrated and stressed Plaintiff, the natural consequence of which was to abuse Plaintiff.  Defendant thereby violated 15 U.S.C. § 1692d(2) of the FDCPA.

## COUNT V—FDCPA VIOLATION

63.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

64.    Defendant violated 15 U.S.C. § 1692d(5) of the FDCPA on multiple occasions by calling Plaintiff upwards of three times a day for several months, all the while knowing that Plaintiff was becoming increasingly annoyed at the unlawful collection attempts.

## COUNT VI—FDCPA VIOLATION

65.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

66.    Defendant represented to Plaintiff that he still owed the debt that had been discharged in his Bankruptcy, thereby violating 15 U.S.C. § 1692e(2)(A) of the FDCPA on multiple occasions.

## COUNT VII—FDCPA VIOLATION

67.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

68.    On at least one occasion, Defendant threatened to garnish Plaintiff's wages if he did not pay the discharged debt, thereby violating 15 U.S.C. § 1692e(5) of the FDCPA.

## COUNT VIII—FDCPA VIOLATION

69.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

70.    After its initial communication with Plaintiff, Defendant failed to provide Plaintiff with the written notice required by 15 U.S.C. § 1692g(a) of the FDCPA.

## COUNT IX—RESPA VIOLATION

71.    The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

72.    Defendant failed to provide Plaintiff with notice that it had obtained the rights to service the Loan, thereby violating 12 U.S.C. § 2605(c) of the RESPA.

## COUNT X—RESPA VIOLATION

73.     The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

74.     Plaintiff's fax of June 6, 2013 was a "qualified written request" as that term is defined in 12 U.S.C. § 2605(e)(1)(B) in that it provided sufficient information to allow the Defendant to identify the borrower and gave reasons why Plaintiff believed Defendant to be in error with regard to the debt.

75.     Defendant failed to acknowledge the June 6 "qualified written request" within five days of receipt, thereby violating 12 U.S.C. § 2605(e)(1)(A) of the RESPA.

## COUNT XI—RESPA VIOLATION

76.     The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

77.     Plaintiff's fax of June 6, 2013 was a "qualified written request" as that term is defined in 12 U.S.C. § 2605(e)(1)(B) in that it provided sufficient information to allow the Defendant to identify the borrower and gave reasons why Plaintiff believed Defendant to be in error with regard to the debt.

78.     Defendant failed to respond to Plaintiff's "qualified written request" of June 6, 2013, within thirty days of receipt, thereby violating 12 U.S.C. § 2605(e)(2) of the RESPA.

## COUNT XII—RESPA VIOLATION

79.     The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

80.     Plaintiff's second letter of July 25, 2013 was a "qualified written request" as that term is defined in 12 U.S.C. § 2605(e)(1)(B).

81.     Defendant failed to acknowledge the July 25 "qualified written request" within five days of receipt, thereby violating 12 U.S.C. § 2605(e)(1)(A) of the RESPA.

## COUNT XIII—RESPA VIOLATION

82. The allegations of paragraphs 1-51 above are realleged and incorporated herein by reference.

83. Plaintiff's second letter of July 25, 2013 was a "qualified written request" as that term is defined in 12 U.S.C. § 2605(e)(1)(B).

84. Defendant failed to respond to Plaintiff's "qualified written request" of July 25, 2013, within thirty days of receipt, thereby violating 12 U.S.C. § 2605(e)(2) of the RESPA.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Declare that Defendant violated the FDCPA, enjoin Defendant from committing any future violations of the Act, and award the Plaintiff actual damages, including mental anguish, and $1,000 in statutory damages for each FDCPA violation pursuant to 15 U.S.C. § 1692k(a);

C. Declare that Defendant violated the RESPA, enjoin Defendant from committing any future violations of the Act, and award the Plaintiff actual damages, including mental anguish, and $2,000 in statutory damages for each RESPA violation pursuant to 12 U.S.C. § 2605(f);

D. Award Plaintiff reasonable attorney's fees and litigation expenses, plus costs, pursuant to 12 U.S.C. § 2605(f) and 15 U.S.C. § 1692k(a); and

E. Grant such other or further relief as is appropriate.

Respectfully submitted this 9th day of September, 2013.

J. Gabriel Carpenter and
Harvey B. Campbell, Jr.
Attorneys for Plaintiff
CAMPBELL & CAMPBELL, P.C.
Post Office Drawer 756
Talladega, AL 35161-0756
(256) 761-1858

**PLAINTIFF DEMANDS TRIAL BY JURY**

Loan No. 0043403542 -7356

# FIXED RATE NOTE

THIS LOAN HAS A PREPAYMENT PENALTY PROVISION.

WE HEREBY CERTIFY THIS
TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL
BY:

March 3, 2003          AMERIQUEST MORTGAGE COMPANY Orange                CA
[Date]                                                  [City]                         [State]

101 Hawthorne Street, TALLADEGA, AL  35160
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 139,500.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is    Ameriquest Mortgage Company .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  7.500 %.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A)  Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    May 1, 2003.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    April 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    505 City Parkway West, Suite 100 Orange, CA 92868

or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. $975.41.

## 4. BORROWER'S RIGHT TO PREPAY

I may repay this Note at any time as provided for in this paragraph. If within the  first  3 year(s) from the date of execution of the Mortgage, Deed of Trust or Security Deed which secures this Note, I prepay in any 12 month period an amount exceeding 20% of the original principal balance under this Note, I will pay a prepayment charge to Note Holder equal to six (6) months advance interest on the amount prepaid in excess of 20% of the original principal balance under this Note.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  fifteen  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C)  Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

1 of 2

Initials: _____

03/03/2003 10:38:30 AM


EXHIBIT
A

 

Loan No.  0043403542 - 7356

(D)   No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.

If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

Borrower: Johnny B. Norred, Jr. _____ (Seal)
SSN: 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

Borrower: _____ (Seal)
SSN:

Borrower: _____ (Seal)
SSN:

Borrower: _____ (Seal)
SSN:

Initials: _____

03/03/2003 10:38:30 AM

258 970033 (Rev. 10/00)



Return To:

Ameriquest Mortgage Company
P.O. Box 11507
Santa Ana, CA 92711

───────────────[Space Above This Line For Recording Data]───────────────

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 3, 2003 together with all Riders to this document.
(B) "Borrower" is Johnny F Norred, Jr., Husband and Wife

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Ameriquest Mortgage Company

Lender is a Corporation
organized and existing under the laws of Delaware

0043403542 - 7356

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3001 7/01

⬛-6(AL) (0005)
Page 1 of 15          Initials: JN
VMP MORTGAGE FORMS - (800)521-7291          03/03/2003 10:38:30

EXHIBIT

B

Exhibit

Lender's address is  1100 Town and Country Road, Suite 200 Orange, CA 92868

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated March 3, 2003
The Note states that Borrower owes Lender one hundred thirty-nine thousand five
hundred and 00/100                                                        Dollars
(U.S. $139,500.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2033

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0043403542 - 7356
Initials:
⬤-6(AL) (0005)                Page 2 of 15   03/03/2003 10:38:30    Form 3001 1/01

(F) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender, with power of sale, the following described property located in the County of TALLADEGA :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 13-08-34-4-003-004.000          which currently has the address of
101 Hawthorne Street                                              [Street]
TALLADEGA                                          (City) , Alabama  35160     [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter created on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

0043403542 - 7356
Initials: _JAL_

-6(AL) (0005)          Page 3 of 19          03/03/2003 10:38:30     Form 3001 1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0043403542 - 7356

Initials: _____

-6(AL) (0005)          Page 4 of 15          03/03/2003 10:38:30          Form 3001 1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0043493542 - 7356

Initials: ___

@-6(AL) (9904).02                    Page 6 of 15      03/03/2003  10:38:30         Form 3001 3/99

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0043403542 ~7356

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0043403542 - 7356

Initials ___

-6(AL) (0005)    Page 10 of 15    03/03/2003  10:38:30    Form 3001 1/01

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in TALLADEGA County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                          Johnny P Norred, Jr.            -Borrower

_____          _____ (Seal)
                                          Linda B Norred                 -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                 -Borrower

_____ (Seal)   _____ (Seal)
                      -Borrower                                 -Borrower

0043403542-7356

-6(AL) (0005)        Page 14 of 15   03/03/2003 10:38:30   Form 3001 1/01

STATE OF ALABAMA,   *Talladega*   County as:

On this ___*3rd*___ day of ___*MARCH*___

I, ___*Charles F. Prince*___ a Notary Public
in and for said county and in said state, hereby certify that

___*Johnny P. Varred Jr.*___

whose name(s) is/are signed to the foregoing conveyance, and who is/are signed to the foregoing
conveyance, and who is/are known to me, acknowledged before me that, being informed of the
contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act
on the day the same bears date.

Given under my hand and seal of office this ___*3rd*___ day of *March*, *2003*.

My Commission Expires: *Oct 15, 2003*   ___*Charles F. Prince*___
                                               Notary Public

Prepared By:
Sonia Franklin
1976 Gadsden Hwy, Suite 205, Birmingham, AL 35235

400-13AL (4/02)          Page 15 of 15          0043403542 - 7366
                                                03/03/2003 10:38:30 AM

B6F (Official Form 6F) (12/07)

In re   John P. Norred, Jr. _____     Case No. _____
                          Debtor                                        (If known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.   xxxx3542 <br><br> American Home Mortgage Services, Inc. <br> P. O. Box 660029 <br> Dallas, TX 75266-0029 | | | | | | | 131,000.00 |
| ACCOUNT NO.   xxxxx4868 <br><br> Bank of America <br> P. O. Box 15726 <br> Wilmington, DE 19886-5726 | | W | April 2005 <br><br> Credit Card Account | | | X | 6,378.54 |
| ACCOUNT NO.   xxxxx8476 <br><br> Bank of America <br> P. O. Box 15026 <br> Wilmington, DE 19850-5026 | | W | 10/01/1995 <br><br> Credit Card Account | | | X | 5,500.00 |
| ACCOUNT NO.   xxxxx7203 <br><br> Capital One <br> P. O. Box 650007 <br> Dallas,TX 75265 | | W | 04/01/2005 <br><br> Credit Card Account | | | X | 1,393.00 |
| ACCOUNT NO.   xxxxx2200 <br><br> CareCredit <br> GE Money Bank <br> P. O. Box 981438 <br> El Paso, TX 79998 | | W | 12/01/2001 <br><br> Credit Card Account | | | X | 2,524.00 |

3   Continuation sheets attached

Subtotal ➤ $   146,795.54

Total ➤ $

(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable on the Statistical Summary of Certain Liabilities and Related Data.)



EXHIBIT

C

American Home Mortgage
Services, Inc.
P. O. Box 660029
Dallas, TX 75266-
0029

Bank of America
P. O. Box 15726
Wilmington, DE 19886-
5726

Bank of America
P. O. Box 15026
Wilmington, DE 19850-
5026

Capital One
P. O. Box 650007
Dallas,TX 75265

CareCredit
GE Money Bank
P. O. Box 981438
El Paso, TX 79998

Chase
P. O. Box 94014
Palatine, IL 60094

Chase
Cardmember Service
P. O. Box 94014
Palatine, IL  60094-
4014

Citi Cards
P. O.Box 6500
Sioux Falls, SD 57117

First National Bank
P. O. Box 797
Talladega, AL 35161

GE Money Bank
P.O. Box 981417
El Paso,TX 79998

GE Money Bank
P. O. Box 530927
Atlanta, GA 30353

GEMB/JC Penney
P. O.Box 981131
El Paso, TX 79998


**EXHIBIT**

*D*

Griffin's Jewelers
East Battle Street
Talladega, AL  35160

HSBC
P. O. Box 80084
Salinas, CA 93912

HSBC Auto Finance
P.O. Box 17904
Sand Diego, CA 92177

HSBC Card Services
P. O. Box 379
Wood Dale, IL  60191-
0379

Linda B. Norred
Apartment 7
Picadilly Circle
Talladega, AL 35160

Linda B. Norred
Apartment 7
Picadilly Circle
Talladega, AL  35160

Peebles
P. O. Box 64
Jacksonville, TX 75766

RBC Bank
P.O.Box 976
Talladega, AL 35161

Target National Bank
P. O. Box 1581
Minneapolis, MN 55440

Wachovia Dealer Services
P. O. Box 168048
Iriving, TX 75016-8048

Washington Mutual
Card Service
P.O. Box 9016
Pleasanton, CA 94566

WFNNB/Peebles
P. O. Box 64
Jacksonville, TX 75766

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

**IN RE:**
John P Norred, Jr
xxx-xx-8377
**Debtor**

**CASE NO: 09-40779-JJR-13**

### MOTION FOR RELIEF FROM STAY

Comes Now, American Home Mortgage Servicing, Inc as attorney in fact for Deutsche Bank National Trust Company , as Trustee in trust for the benefit of the Certificateholders for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates Series 2003-5, a creditor in the above-styled Bankruptcy case (the "Creditor"), and moves this Court, pursuant to the applicable Bankruptcy rules and the Bankruptcy Code, to enter an order terminating the stay imposed by §362(a) of the Bankruptcy Code as said stay applies to the Creditor or, in the alternative, for adequate protection of the Creditor's interest in the real property described in Paragraph 6 below.

As grounds for its motion, the Creditor states the following:

1.      Johnny P Norred, Jr., Husband and Wife executed a mortgage to Creditor, then known as Ameriquest Mortgage Company, a copy of which mortgage is attached hereto as Exhibit "A" and incorporated herein by this reference thereto.

2.      Said mortgage was made to secure an indebtedness to the Creditor in the amount of $139,500.00 together with interest at the rate of 7.500% per annum as evidenced by that certain note executed by the Debtor, a copy of which is attached hereto as Exhibit "B" and incorporated herein by this reference thereto.



**EXHIBIT**

E

3.    The Debtor claims an interest in the real property which is subject to the Creditor's mortgage.

4.    The amount necessary to cure the post-petition default as of August 12, 2009 is $6,549.13.  The debtor has failed to make any post-petition installments and the account is currently 5 months in arrears.  An affidavit evidencing the default is attached hereto as Exhibit "C" and incorporated herein by this referenced thereto.

5.    The Debtor is in default of his obligations under the note and mortgage so that the total of the indebtedness is due and payable in the approximate amount of $144,727.76, exclusive of costs of collection and other charges due under the note and mortgage.

6.    The property securing the indebtedness to the Creditor is located at 101 Hawthorne St, Talladega, AL 35160.

7.    Upon information and belief, the real property securing the indebtedness is worth less than the indebtedness secured thereby.

8.    The Creditor's interest in the real property described hereinabove is not adequately protected.

9.    The Creditor has had to incur additional expense in order to collect this post-petition debt in the form of attorney's fees and costs and requests this Court to award the Creditor reasonable attorney's fees and court costs associated with this matter.

WHEREFORE, the Creditor requests that this Court enter an order terminating the automatic stay of §362 and that the Creditor be granted leave to recover the indebtedness secured by its mortgage, obtain possession of its collateral and foreclose or liquidate its collateral under state law; for reasonable attorney's fees and costs associated

with the filing of this motion; and Creditor further requests the Court to waive the ten

(10) day waiting period required under Bankruptcy Rule 4001(a)(3), as amended, and for

such further relief as the Court deems appropriate.

Respectfully submitted this the 12th day of August, 2009.

/s/ Edith S. Pickett
Edith S. Pickett, Attorney for
American Home Mortgage
Servicing, Inc as attorney in fact for
Deutsche Bank National Trust
Company , as Trustee in trust for the
benefit of the Certificateholders for
Ameriquest Mortgage Securities
Inc., Asset-Backed Pass-Through
Certificates Series 2003-5

OF COUNSEL:
SHAPIRO & PICKETT, L.L.P.
651 Beacon Parkway West, Suite 115
Birmingham, Alabama 35209
(205) 323-7757
09-009506

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 12th day of August, 2009, served a copy of the
foregoing pleading on the parties listed below by placing the same in the U.S. Mail, first
class postage pre-paid, and/or by Electronic Transmission (ECF e-mail):

Harvey C. Campbell, Jr.
P.O. Drawer 756
400 S. Court Square
Talladega, AL 35161

Linda B. Gore
NON-PAYMENTS: P.O. Box 1338
Gadsden, AL 35902

Robert J. Landry
United State Courthouse
914 Noble Street
Anniston, Alabama 36201

John Norred, Jr
709 Patricia Avenue
Talladega, AL 35160

/s/ Edith S. Pickett
Edith S. Pickett

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR
DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING
TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE
BANKRUPTCY LAWS OF THE UNITED STATES."

09-009506

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

IN RE:
John P. Norred, Jr.,
        **DEBTOR.**

CASE NO: 09-40779-JJR-13

### WITHDRAWAL OF MOTION FOR RELIEF

Comes now AMERICAN HOME MORTGAGE SERVICING, INC., and moves

this Honorable Court to allow it to withdraw the Motion for Relief as requested by the

client.

/s/ Edith S. Pickett
Edith S. Pickett
Attorney for Plaintiff
American Home Mortgage Servicing, Inc.



EXHIBIT

F

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 3rd day of September, 2009, served a copy of the foregoing pleading on the parties listed below by placing the same in the U.S. Mail, first class postage pre-paid, and/or by Electronic Transmission (ECF e-mail):

Harvey C. Campbell, Jr.
P.O. Drawer 756
400 S. Court Square
Talladega, AL 35161

Linda B. Gore
NON-PAYMENTS: P.O. Box 1338
Gadsden, AL 35902

Robert J. Landry
United State Courthouse
914 Noble Street
Anniston, Alabama 36201

John P. Norred, Jr.
709 Patricia Avenue
Talladega, AL 35160

/s/ Edith S. Pickett
Edith S. Pickett

"THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES."

09-009506

B18W (Form 18W) (08/07)

# United States Bankruptcy Court
## NORTHERN DISTRICT OF ALABAMA
### Eastern Division
1129 Noble Street, Room 117
Anniston, AL 36201

### Case No. 09–40779–JJR13
### Chapter 13

**In re** Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
John P. Norred Jr.
709 Patricia Avenue
Talladega, AL 35160

Social Security / Individual Taxpayer ID No.:
xxx–xx–8377

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR AFTER COMPLETION
## OF CHAPTER 13 PLAN

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 1328(a) of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 5/31/12

James L. Robinson
United States Bankruptcy Judge

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

**ATTENTION DEBTOR:    IMPORTANT DOCUMENT!    PLEASE KEEP FOR YOUR RECORDS!**


EXHIBIT
G

*Form 18W (08/07)*

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 13 CASE

This court order grants a discharge to the person named as the debtor after the debtor has completed all payments under the chapter 13 plan. It is not a dismissal of the case.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to section 502 of the Bankruptcy Code.

### Debts That are Not Discharged

Some of the common types of debts which are <u>not</u> discharged in a chapter 13 bankruptcy case are:

a. Domestic support obligations;

b. Debts for most student loans;

c. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

d. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

e. Debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual (in a case filed on or after October 17, 2005);

f. Debts provided for under section 1322(b)(5) of the Bankruptcy Code and on which the last payment is due after the date on which the final payment under the plan was due;

g. Debts for certain consumer purchases made after the bankruptcy case was filed if prior approval by the trustee of the debtor's incurring the debt was practicable but was not obtained;

h. Debts for certain taxes to the extent not paid in full under the plan (in a case filed on or after October 17, 2005); and

i. Some debts which were not properly listed by the debtor (in a case filed on or after October 17, 2005).

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**



# CAMPBELL & CAMPBELL, PC

## ATTORNEYS AT LAW

HARVEY B. CAMPBELL, JR.
SANDRA J. CAMPBELL

SHAVON L. RICHARDSON
MEGAN C. CARPENTER
RACHEL H. PINSON
J. GABRIEL CARPENTER

JUNE 6, 2013

OCWEN LOAN

VIA: FAX (407) 737-5199

    RE:  JOHN P. NORRED, JR.
        CHAPTER 13 – CASE NO. 40779
        DISCHARGE OF DEBTOR

DEAR MADAM OR SIR:

    PLEASE FIND ATTACHED HERETO A COPY OF THE DISCHARGE ORDER GRANTED IN THE CHAPTER 13 CASE OF JOHN P. NORRED, JR.  CEASE ANY FURTHER CONTACT WITH MR. NORRED IN ANY ATTEMPT TO COLLECT A DEBT.

    SHOULD YOU HAVE ANY FURTHER QUESTIONS, YOU MAY HAVE YOUR ATTORNEY CONTACT MY OFFICE.

    SINCERELY,

    CAMPBELL & CAMPBELL, PC

    HARVEY B. CAMPBELL, JR.
    ATTORNEY AT LAW

HBC, JR./JB
ATTACHMENT



EXHIBIT

H



# CAMPBELL & CAMPBELL, PC
## ATTORNEYS AT LAW

HARVEY B. CAMPBELL, JR.
SANDRA J. CAMPBELL

SHAVON L. RICHARDSON
MEGAN C. CARPENTER
RACHEL H. PINSON
J. GABRIEL CARPENTER

THURSDAY, JULY 25, 2013

Ocwen Loan Servicing, LLC
Post Office Box 24737
West Palm Beach, FL  33416

Ocwen Loan Servicing, LLC
Post Office Box 785056
Orlando, FL  32878

RE:   *John P. Norred, Jr.*
      *Property Address:  709 Patricia Avenue; Talladega, AL  35160*
      *Bankruptcy No.:  09-40779-JJR13; Northern District of Alabama, Eastern Division*

To Whom It May Concern:

This letter is to advise you that John P. Norred, Jr. filed a Chapter 13 Bankruptcy on March 19, 2009 and the debt you are attempting to collect was included in that bankruptcy.  Mr. Norred received a discharge order from said Chapter 13 Bankruptcy on May 31, 2012, which you have already been provided a copy of.

Therefore, all further attempts to collect this debt should be stopped and all communication with Mr. Norred is to cease immediately.  Any further attempts to collect this debt will be deemed a violation of this client's discharge order and appropriate action will be taken.

If you have any questions or if you need anything else, feel free to contact me at (256) 761-1858.

Thanking you in advance for your cooperation.

Sincerely,

/s/ Harvey B. Campbell, Jr.

Harvey B. Campbell, Jr.
Attorney at Law

HBC/bmh

cc:   John P. Norred, Jr.
      709 Patricia Avenue
      Talladega, AL 35160



EXHIBIT
I

POST OFFICE DRAWER 756 • 400 SOUTH COURT SQUARE • TALLADEGA, ALABAMA 35161-0756
PHONE: (256) 761-1858/1-800-763-0310 • FAX: (256) 362-5966
www.campbellandcampbellpc.com
WE ARE A DEBT RELIEF AGENCY



# CAMPBELL & CAMPBELL, PC
## ATTORNEYS AT LAW

HARVEY B. CAMPBELL, JR.
SANDRA J. CAMPBELL

SHAVON L. RICHARDSON
MEGAN C. CARPENTER
RACHEL H. PINSON
J. GABRIEL CARPENTER

THURSDAY, JULY 25, 2013

Ocwen Loan Servicing

VIA FAX:  (407) 737-5199

RE:     *John P. Norred, Jr.*
        *Property Address:  709 Patricia Avenue; Talladega, AL 35160*
        *Bankruptcy No.:  09-40779-JJR13; Northern District of Alabama, Eastern Division*

To Whom It May Concern:

This letter is to advise you that John P. Norred, Jr. filed a Chapter 13 Bankruptcy on March 19, 2009 and the debt you are attempting to collect was included in that bankruptcy.  Mr. Norred received a discharge order from said Chapter 13 Bankruptcy on May 31, 2012, which you have already been provided a copy of.

Therefore, all further attempts to collect this debt should be stopped and all communication with Mr. Norred is to cease immediately.  Any further attempts to collect this debt will be deemed a violation of this discharge order and appropriate action will be taken.

If you have any questions or if you need anything else, feel free to contact me at (256) 761-1858.

Thanking you in advance for your cooperation.

Sincerely,

Harvey B. Campbell, Jr.
Attorney at Law

HBC/bmh

cc:     John P. Norred
        709 Patricia Avenue
        Talladega, AL 35160



# CAMPBELL & CAMPBELL, PC

## ATTORNEYS AT LAW

HARVEY B. CAMPBELL, JR.
SANDRA J. CAMPBELL

SHAVON L. RICHARDSON
MEGAN C. CARPENTER
RACHEL H. PINSON
J. GABRIEL CARPENTER

THURSDAY, JULY 25, 2013

Ocwen Loan Servicing, LLC
Post Office Box 24737
West Palm Beach, FL 33416

Ocwen Loan Servicing, LLC
Post Office Box 785056
Orlando, FL 32878

RE: *John P. Norred, Jr.*
*Property Address: 709 Patricia Avenue; Talladega, AL 35160*
*Bankruptcy No.: 09-40779-JJR13; Northern District of Alabama, Eastern Division*

To Whom It May Concern:

Please treat this letter as a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(3). This request is made on behalf of my client(s), the above-named. My client(s) dispute(s) the alleged balance due, the arrears alleged and how the payments have been credited to this debt. Specifically, I am requesting the following information:

1. A complete itemized list and total of all payments tendered by the above-named debtor(s) or on behalf of the above-named debtor(s) in the above-referenced loan throughout the life of said loan.

2. A complete and itemized statement of the loan history from the date of the loan to the date of this letter including, but not limited to, all receipts by way of payment or otherwise and all charges to the loan in whatever form. This history should include the date of each and every debit and credit to any account related to this loan, the nature and purpose of each such debit and credit, and the name and address of the payee of any type of disbursement related to this account.

3. A complete and itemized statement of any and all arrears including each month in which the alleged default occurred and the amount of each monthly default.

4. A complete and itemized statement of any late charges to this loan from the date of this loan to the date of this letter.



EXHIBIT

J

5.   A complete and itemized statement of the escrow account of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product.

6.   A complete and itemized statement from the date of the loan to the date of this letter of any force-placed insurance and expenses related thereto, related in any way to this loan.

You should be advised that you must acknowledge receipt of this qualified written request within twenty (20) business days pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1).  In addition, you must make all necessary corrections to the account and provide us with the requested documentation within sixty (60) business days pursuant to 12 U.S.C. Section 2605(e)(2).

You should also be advised that the debtor(s) herein will seek the recovery of damages, costs, and reasonable legal fees for each failure to comply with the questions and requests herein.  The debtor(s) also reserve the right to seek statutory damages for each violation of any part of Section 2605 of Title 12 of the United States Code.

/s/ Harvey B. Campbell, Jr.

Harvey B. Campbell, Jr.
Attorney at Law
CAMPBELL & CAMPBELL, P.C.
400 South Court Square
Post Office Drawer 756
Talladega, AL 35161
(256) 761-1858

HBC/bmh



*OCWEN Loan Servicing, LLC*
*P.O. Box 785055*
*Orlando, FL 32878-5055*

WEBSITE: WWW.OCWEN.COM

August 9, 2013

Johnny P. Norred
709 Patricia Avenue
Talladega AL 35160

Loan Number: 7145859505

Dear Customer(s):

Enclosed please find the information that was requested for the above account.

Loan Document Request        ☒
Payment History              ☐
Verification of Mortgage     ☐

If you should have any questions, please call 1-800-74OCWEN (746-2936).

Sincerely,

Customer Service
Ocwen



EXHIBIT
K

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*


Ocwen Case 5:13-cv-01664-VEH   Document 1   Filed 09/09/13   Page 46 of 49
P.O. Box 785063
Orlando, Florida 32878 -5063
*(Do not send correspondence or payments to the above address.)*                                    WWW.OCWEN.COM

July 31, 2013

Johnny P. Norred
Mailing address: 709 Patricia Avenue
                 Talladega AL 35160

RE: LOANNUMBER: 7145859505
Property Address: 101 Hawthorne Street
                  Talladega AL 35160

Dear Johnny P. Norred,

OCWEN would like to take this opportunity to thank you for your recent communication regarding the above referenced loan.  We appreciate the time and effort on your part to bring your concern to our attention.  Pursuant to your concern, we have reviewed the loan and below is the recap of our response to the concern raised:

**Concern:** You requested Ocwen to provide you with the investor details on the loan.

**Response:** Please note that there is no single investor of your loan.  Your loan is one of many in a securitized investment trust: Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2003-5.

Ocwen is the servicer of the loan, and not necessarily the owner of the loan.  Although the ownership of the loan may change, the ownership has no bearing on the servicing of the loan.  Ocwen is obligated to service the loan according to the terms and conditions of the original loan documents executed by the borrowers.  As the servicer of the loan, all issues regarding the loan should be forwarded to Ocwen for an appropriate response.

For any questions or concerns regarding the loan, you may contact our Customer Care Center at (800) 746-2936.

We trust the information provided has fully addressed your concern.  Please visit our website (www.Ocwen.com) which is available 24 hours a day, seven days a week, as many of the answers to your account specific questions may be found there.  However, should you have any further questions in regards to this issue, please contact our Research Department at (800) 241-9960.  If after speaking with our Research Department you still have questions or concerns, please feel free to contact the Ocwen consumer advocate by email at Ombudsman@ocwen.com or by phone at (800) 390-4656.  You may also send written correspondence to the following address:

Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. BOX 24736
West Palm Beach, FL 33416-4736

Sincerely,

Eve Sparsha
Research Department
Ocwen



*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

# GENERAL CHANGE ENDORSEMENT

## THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

Attached to and forming a part of

| Policy No. | Insured |
|---|---|
| ALR07236129035 | JOHNNY P NORRED |
| Endorsement Effective          (Standard Time) | Agency |
| 08/05/2013        (X) 12:01 AM   ( ) 12:01 PM | |

This endorsement provides only those changes where an   ☒ appears in the  ☐ beside the coverage.

☐  1.  Effective dates are amended/corrected as shown below:
☐  2.  Add/Delete endorsement as shown below:
☐  3.  Deductible amended as shown below:
☐  4.  Coverage Amount amended/corrected as shown below:
☒  5.  Mailing Address amended/corrected as shown below:
☐  6.  Named Insured/Additional Insured amended as shown below:
☐  7.  Major Number/Producer Number/Agent Number amended/corrected as shown below:
☐  8.  Loan Number amended/corrected as shown below:

### IT IS HEREBY UNDERSTOOD AND AGREED THAT
### THE MAILING ADDRESS IS AMENDED TO READ:

JOHNNY P NORRED
709 PATRICIA AVE.
TALLADEGA, AL  35160

### ALL OTHER CONDITIONS OF THE POLICY REMAIN THE SAME.
### PLEASE ATTACH THIS ENDORSEMENT TO YOUR POLICY.

Re:
JOHNNY P NORRED
709 PATRICIA AVE.
TALLADEGA, AL  35160

OCWEN LOAN SERVICING, LLC
ITS SUCCESSORS AND/OR ASSIGNS
PO BOX 6723
SPRINGFIELD, OH  45501-6723

Loan No.:  7145859505

Property Address:

101 HAWTHORNE ST
TALLADEGA, AL  35160

08/17/2013
Date

EXHIBIT
M

MSP-GEN-END-B (10-08)

AF9060-0911

OCWEN LOAN SERVICING, LLC
INSURANCE CENTER
P.O. BOX 6723
SPRINGFIELD, OH  45501-6723

009028
JOHNNY P NORRED
709 PATRICIA AVE.
TALLADEGA, AL  35160

Re: 7145859505



0200

Ocwen Loan Servicing, LLC
www.ocwen.com

**O C W E N**

NMLS #: 1852
NC Permit No. 3946
**CUSTOMER CARE CENTER 1-800-746-2936**
*Your call may be recorded for the coaching and development of our associates.*

**Account Statement**

| | |
|---|---|
| Account Number: | 7145859505 |
| Account Statement Date: | 08/19/2013 |
| Property Address: | |
| 101 Hawthorne St | |
| Talladega AL 35160 | |
| DELQ | Page 1 |

1AB    00458/129537/005005 0501   1 ACQMVH

JOHNNY P NORRED
709 PATRICIA AVE
TALLADEGA AL  35160-2949



**Special Notices**

First Protector covers important gaps in your homeowner's policy that help keep your home safe. Visit www.OcwenFirstProtector.com or call 1-877-479-3947, 8am-8pm E.T. for more information.

**Account Information**

| | |
|---|---|
| * Current Principal Balance: | 131,369.80 |
| Interest Rate: | 7.50000% |
| Next Payment Due Date: | 09/01/2008 |
| Escrow Advance Balance: | 8,882.25- |
| Interest Paid Year-To-Date: | .00 |
| Taxes Paid Year-To-Date: | .00 |
| Beginning Principal Balance: | 131,369.80 |
| Beginning Escrow Balance: | .00 |
| Escrow Deposits/Adjustments Year-To-Date: | 6,969.25- |
| Escrow Disbursements/Adjustments Year-To-Date: | 1,913.00- |
| Recently Assessed Amounts: | |
| 07/22/13 Property Inspection Fee: | 10.50 |
| 07/24/13 Title Report Fee: | 300.00 |

*This is the principal balance only, not the amount required to pay your account in full.

**Details of Amount Due**

| | |
|---|---|
| Current Amount Due: | |
| Principal: | 224.3_ |
| Interest: | 751.1_ |
| Escrow: | 249.5_ |
| Current Amount Due by 09/01/13: | 1,224.9_ |
| Past Due Amount: | |
| Principal: | 11,194.4_ |
| Interest: | 47,330.1_ |
| Escrow: | 8,960.3_ |
| Past Due Amounts DUE IMMEDIATELY: | 67,484.9_ |
| Assessed Fees/Expense Outstanding: | |
| Late Charges: | 1,112.3_ |
| Prev-Prior Servicer Fees: | 990.5_ |
| Prev-Property Inspection Fee: | 31.5_ |
| Prev-Property Valuation Expense: | 342.0_ |
| Prev-Title Report Fee: | 300.0_ |
| Total Fees/Expense Outstanding: | 2,776.3_ |
| **Total Amount Due:** | 71,486.1_ |

**Recent Account Activity**

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 08/07/13 | Insurance Disbursement AMERICAN SECURITY GROUP | | | 1,913.00- | | | | | 1,913.00- |

**Important Messages**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to www.ftc.gov/credit.

If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. Payments received are to be applied in accordance with  your mortgage note. Payments will be first applied to  bring your loan contractually current. Any additional  funds received will be applied to outstanding fees and advances prior to being applied to principal.



EXHIBIT
N

FOLD AND DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE.
PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT · ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

FOLD AND DETACH HERE